UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| JAMES L. JONES, | ) | |
| | ) | |
| Plaintiff, | ) | 13 C 8993 |
| v. | ) | |
| | ) | Judge John Robert Blakey |
| DUPAGE COUNTY SHERIFF'S OFFICE, | ) ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant, DuPage County Sheriff's Office, by its attorney, Robert Berlin, State's Attorney of DuPage County, through his Assistants, William Roberts, Lisa Smith, and Gregory Vaci, hereby submit this memorandum of law in support of its motion for summary judgment.

### INTRODUCTION

Plaintiff's one- Count Second Amended Complaint alleges retaliation in violation of the Americans with Disabilities Act ("ADA"). Defendant moves to dismiss Plaintiff's retaliation claim for the reasons set forth in this memorandum and its 56.1 Statement of Undisputed Facts.

### STATEMENT OF FACTS

James Jones ("Plaintiff") brings this action under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 ("ADA") (SOF ¶ 1). Plaintiff was hired by Defendant, the Sheriff of DuPage County, and sworn into the position of Sheriff's Deputy on May 23,

1993. (SOF ¶ 3) He proceeded to take his retirement from the position of Deputy Sheriff in June of 2014. (SOF ¶ 4) On June 4, 2012, Plaintiff filed charge number 440-2012-03712 with the Equal Employment Opportunity Commission ("EEOC"). In that charge, Plaintiff claimed retaliation and disability discrimination by checking those respective boxes on the charge form. (SOF ¶ 5) Charge number 440-2012-03712 was the first EEOC charge filed by Plaintiff. (SOF ¶ 6) Plaintiff alleges that he has a disability due to a bilateral foot condition caused by a severe frostbite suffered by him in 1978. (SOF ¶ 7) This condition allegedly limited his ability to climb stairs in that climbing one or two flights of stairs would cause him discomfort. (SOF ¶ 8) On September 18, 2013, Plaintiff filed EEOC charge 440-2013-05811 again checking the boxes for disability and retaliation. (SOF ¶ 11) Nowhere in the body of this EEOC charge did Plaintiff make mention of a failure to accommodate claim under the Americans with Disabilities Act. (Id.)

On December 17, 2013, Plaintiff filed his initial complaint in this lawsuit. (SOF ¶ 10) He subsequently filed a Second Amended Complaint. Plaintiff set forth his allegations regarding his retaliation claim in Count I, the sole Count contained in his lawsuit. With respect to Plaintiff's claim of retaliation, Plaintiff alleges that as a result of filing the June 4, 2012 EEOC charge the employer took certain actions against him. (SOF ¶ 21) Among those allegations, Plaintiff claims that, Sergeant Hoffman, one of his former supervisors, directed Plaintiff to leave work and not return without a doctor's note, and when he returned with a doctor's note, Hoffman marked him down as "no call/no show". (SOF ¶ 12) Plaintiff also claims that, Hoffman subsequently reassigned

2

Plaintiff to the security assignment with stairs when he returned from leave. (SOF ¶ 13) Plaintiff conceded that Hoffman took no actions against him after Plaintiff filed the June 4, 2012 EEOC charge. (SOF ¶ 15) In fact, Plaintiff conceded that between the dates of May 21, 2012 and September 18, 2013, Sergeant Hoffman was not involved in any actions taken against Plaintiff. (SOF ¶ 14) Sergeant Lackomecki was Plaintiff's supervisor between the dates of May 2012 and September 18, 2013 along with Sergeants Dillinger and Orphan. (SOF ¶ 16) As part of his retaliation claim, Plaintiff claims that Lackomecki refused to allow him to request time off for doctor's visits because he had a disability although he had no recollection of the dates that he requested time off for doctor's appointments and was refused. (SOF ¶ 17) Plaintiff conceded that on every occasion that Lackomecki refused to accept Plaintiff's advance requests for time off for medical appointments, he would call in sick and was still able to attend those medical appointments. (SOF ¶ 18) In addition, Plaintiff received no discipline for calling in sick on any occasion. (SOF ¶ 19) As part of his retaliation claim, Plaintiff claims that Dillinger changed his schedule but Plaintiff has no recollection of the date when that occurred. (SOF ¶ 20) As part of his retaliation claim, Plaintiff alleges that Defendant repeatedly placed him in security assignments with stairs. (SOF ¶ 22) He further alleges that his assignment was changed in retaliation for filing the June 4, 2012 EEOC charge, yet he has no recollection of the date of any assignment change or the nature of any assignment change. (SOF ¶ 23) As part of his retaliation claim, Plaintiff alleges that Lackomecki changed his assignment due to his filing the June 4, 2012 EEOC charge, but has no recollection of the change of assignment made by Lackomecki or the date of any

3

change of assignment. (SOF ¶ 25) The only action that Plaintiff alleges Lackomecki took against him for filing the June 4, 2012 EEOC charge was changing his work assignment. (SOF ¶ 26) The only allegation that Plaintiff claims was retaliation by Sergeant Orphan for filing his first EEOC charge was that Orphan gave Plaintiff a bad evaluation and later changed it to a better evaluation. (SOF ¶ 28) The only evidence that Plaintiff points to that would indicate that the low evaluation score of 40 was caused by his filing of the June 4, 2012 EEOC was that he felt like he was being retaliated against. (SOF ¶ 29) While Plaintiff is unable to provide dates for when any of these alleged actions occurred, he does concede that for a full year after he filed his EEOC charge, from June 4, 2012 through June 4, 2013, no actions were taken against him by any of his supervisors. (SOF ¶ 30)

Plaintiff claims that he chose to retire from his position of deputy sheriff because his supervisor's actions against him constituted a constructive discharge and therefore he had no option other than retirement. The actions taken by his supervisors that Plaintiff claims made it too unbearable to continue working for the Sheriff's Office thereby forcing him into retirement, consisted of, his assignments being changed; his having to call in sick instead of being allowed to put in time off for doctor's appointments in advance; being given a poor performance evaluation and subsequently changing that score to a better score; being assigned to courtroom 2002; being assigned to base; and receiving assignments late (SOF ¶ 31).

## STANDARD OF REVIEW

Summary judgment is appropriate where the record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 502 (7th Cir. 2004); Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when the evidence is sufficient to support a reasonable jury verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment should be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Schacht v. Wisconsin Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999).

**Plaintiff fails to provide evidence that would allow him to avoid summary judgment on his claim of retaliation under the ADA**

Plaintiff's sole claim in this case is that Defendant retaliated against him because he filed an EEOC charge on June 4, 2012. To make out a *prima facie* case for retaliation, an employee can proceed using either a direct or indirect method of proof. *Scruggs v. Carrier Corp.*, 688 F.3d 821, 826 (7th Cir. 2012). To establish a *prima facie* case using the direct method, a plaintiff has to "present evidence of (1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." *Id*. Under the indirect method a plaintiff must show that he engaged

in protected activity, was performing his job satisfactorily, and was singled out for an adverse employment action that similarly situated employees who did not engage in protected activity did not suffer. *See Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 788 (7th Cir. 2007); *Stone v. City of Indianapolis Pub. Util. Div.*, 281 F.3d 640, 644 (7th Cir. 2002). Defendant does not dispute that Plaintiff's filing of EEOC charge 440-2012-03712, on June 4, 2012 was statutorily protected activity. Defendant disputes, however, that any supervisor took any "materially adverse" actions against Plaintiff and that any causal connection existed between the EEOC filing and any of the alleged adverse action.

Plaintiff's Second Amended Complaint sets forth constructive discharge as the alleged materially adverse action taken against him. (SOF ¶ 31) However, while it is unclear as to whether he also claims that each of the separate allegations against his supervisors were also adverse employment actions, Defendant disputes that proposition. The individual actions alleged by Plaintiff are essentially that, (1) Plaintiff was placed in assignments with stairs; (2) Defendant made "false paper" on Plaintiff by giving him an evaluation score of 40 and subsequently raising that score to a 67; (3) Plaintiff was directed to leave work and not return without a doctor's note and then marked down as "no call/no show". Defendant maintains that none of the above can be considered adverse employment actions and in fact, there is no evidence of any adverse employment action taken against Plaintiff contained in the record. Title VII's retaliation provision forbids any materially adverse action that would dissuade a reasonable employee from making a charge of discrimination even if the action does not affect the terms or conditions of employment. See *Burlington Northern & Santa Fe Ry. v. White,* 548

U.S. 53, 67 (2006); *Henry v. Milwaukee County,* 539 F.3d 573, 586-87 (7th Cir. 2008). None of these allegations could be considered materially adverse under that standard.

However, even if these alleged occurrences could be adverse employment actions, Plaintiff provides no evidence to establish a causal connection to the June 4, 2012 EEOC charge. Plaintiff admits that he has no knowledge of when they occurred. In his Second Amended Complaint, Plaintiff claims that, Sergeant Hoffman directed Plaintiff to leave work and not return without a doctor's note, and when he returned with a doctor's note, Hoffman marked him down as "no call/no show". Plaintiff also claims that, Sergeant Hoffman subsequently reassigned Plaintiff to the security assignment with stairs when he returned from leave. Yet, in his sworn testimony, Plaintiff concedes that Sergeant Hoffman did not take any action against him after Plaintiff filed the June 4, 2012 EEOC charge. (SOF ¶15)

Plaintiff further claims that, Defendant repeatedly placed him in security assignments with stairs. However, he has no recollection of the date of any assignment change that he claims was in retaliation for filing the June 4, 2012 EEOC charge. (SOF ¶ 23) In fact, Plaintiff did not even recall the nature of the change of assignment. (Id.) Specifically, Plaintiff alleges that Sergeant Lackomecki changed his assignment due to his filing the June 4, 2012 EEOC charge, but again has no recollection of the change of assignment made or the date of any change of assignment. (SOF ¶25) In sum, Plaintiff cannot establish when any of the alleged actions taken by his supervisors occurred and therefore he cannot establish that they resulted from filing his first EEOC charge. For

those reasons Plaintiff's retaliation claim regarding any of the alleged individual actions taken by his various supervisors must be dismissed.

Plaintiff's only potential remaining claim is that Plaintiff was constructively discharged in retaliation for filing his June 4, 2012, EEOC charge. There is no dispute that a constructive discharge constitutes an adverse employment action. *Pa. State Police v. Suders*, 542 U.S. 129 (2004). However, Plaintiff fails to provide sufficient evidentiary support for a claim of constructive discharge. A constructive discharge occurs when a plaintiff shows that he was forced to resign because his working conditions, from the standpoint of the reasonable employee, had become unbearable. *Id.* at 147; *Roby v. CWI, Inc.*, 579 F.3d 779, 785 (7th Cir. 2009); *see also EEOC v. Univ. of Chi. Hosps.*, 276 F.3d 326, 331 (7th Cir. 2002). This circuit has recognized two different forms of constructive discharge, but neither dispenses with the requirement that the work environment had become intolerable. *See Pa. State Police*, 542 U.S. at 141 ("Under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes."); *Cigan v. Chippewa Falls Sch. Dist.*, 388 F.3d 331, 333 (7th Cir. 2004); *Univ. of Chi. Hosps.*, 276 F.3d at 332. In the first form, an employee resigns due to alleged discriminatory harassment. Such cases require a plaintiff to show working conditions even more egregious than that required for a hostile work environment claim because employees are generally expected to remain employed while seeking redress, *Roby*, 579 F.3d at 785, thereby allowing an employer to address a situation before it causes the employee to quit. *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 789-90 (7th Cir. 2007). Constructive

discharge has been found when there is a threat to a plaintiff's personal safety. *See, e.g., Porter v. Erie Foods, Int'l, Inc.*, 576 F.3d 629, 640 (7th Cir. 2009) (claim for constructive discharge possible where harassment includes repeated use of noose and implied threats of physical violence); *Taylor v. W. & S. Life Ins. Co.*, 966 F.2d 1188, 1198-99 (7th Cir. 1992) (constructive discharge found where supervisor brandished a firearm and held it to the plaintiff's head).

The second form of constructive discharge occurs "[w]hen an employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated. . . ." *Univ. of Chi. Hosps.*, 276 F.3d at 332. In this situation, if the plaintiff employee resigns, the employer's conduct may amount to constructive discharge. *Id*. This form of constructive discharge, however, does not eliminate the need for the plaintiff to show that his working conditions had become intolerable. *Id.; Cigan*, 388 F.3d at 333. And a working condition does not become intolerable or unbearable merely because a "prospect of discharge lurks in the background." *Id*.

The undisputed facts here show that Plaintiff cannot establish that a constructive discharge occurred in either of the two forms. Plaintiff claims that the actions taken by his supervisors that forced him to retire, consisted of, his assignments being changed; his having to call in sick instead of being allowed to put in time off for doctor's appointments in advance even though he was still able to use sick time; being given a poor performance evaluation and subsequently changing that score to a better score; being assigned to courtroom 2002; being assigned to base; and receiving assignments late. (SOF ¶31) Even if this Court assumes that all of these things occurred to Plaintiff

subsequent to his EEOC filing of June 4, 2012, they do not approach the necessary proof to establish a constructive discharge. As no constructive discharge occurred, Plaintiff cannot avoid summary judgment on his retaliation case.

Even if Plaintiff could prove that he was constructively discharged or that any of the other alleged actions were taken against him, he provides no evidence under the direct method of proof of a causal connection between his EEOC charge and any adverse employment action. In fact, Plaintiff even admits that for a full year after Plaintiff filed his first EEOC charge, June 4, 2012 through June 4, 2013, his supervisors took no actions against him. (SOF ¶30) When analyzing retaliation claims, a "substantial time lapse . . . is counter-evidence of any causal connection." *Johnson v. Univ. of Wisc.*, 70 F.3d 469, 480 (7th Cir. 1995). The inference of causation weakens as the time between the protected expression and the adverse action increases, and then "additional proof of a causal nexus is necessary." *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 511 (7th Cir. 1998). Plaintiff provides no additional proof of a causal nexus that would overcome such a substantial time lapse. Further, Plaintiff's claim fails under the indirect method because he cannot identify any similarly situated employee who did not engage in protected activity under the ADA, who was treated more favorably than he. Given the complete lack of evidence to support any element of his case under either method of proof, summary judgment on Plaintiff's retaliation claim is proper.

10

## **CONCLUSION**

For the reasons set forth in Defendant's Motion for Summary Judgment and this Memorandum of Law, Plaintiff's claim of retaliation in his Second Amended Complaint should be dismissed.

By: /S/ Gregory Vaci
#6204967
Assistant State's Attorney
503 N. County Farm Road
Wheaton, IL 60187
[630] 407 - 8221