UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| James L. Jones, | |
| Plaintiff, | Case No. 13 C 8993 |
| v. | Judge John Robert Blakey |
| DuPage County Sheriff, | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff James L. Jones worked for the DuPage County Sheriff's Office as a Deputy Sheriff from May of 1993 until his retirement in June of 2014. Before he retired, on December 17, 2013, Jones sued the Sheriff's Office alleging retaliation in violation of the Americans with Disabilities Act of 1990 (hereinafter the "ADA"). He alleged that he had been retaliated against for filing disability discrimination charges against his employer with the Equal Employment Opportunity Commission ("EEOC"). The Sheriff's Office moved for summary judgment on Jones' claim [66]. For the reasons explained below, Defendant's motion is granted.

## I. Background[1]

Plaintiff James L. Jones began working as a Deputy Sheriff for the DuPage County Sheriff's Office on May 23, 1993. Deposition of James Jones [68-3] at 9.[2] The DuPage County Sheriff's Office is divided into three units, and during his employment, Jones worked for all three: law enforcement, court security and corrections. Jones Dep. at 9-10. Jones started in corrections, then requested and received a transfer to court security in 1996. *Id.* at 10. He remained in court security until approximately 2006 or 2007, when he requested and received a transfer to law enforcement or "patrol," where he went through the Field Training Officer program. *Id.* at 11-13. Within six months, Jones realized that he did not like patrol and requested and received a transfer back to the court security unit, where he remained until he retired in June of 2014. *Id.* at 14.

Prior to becoming a Deputy Sheriff, Plaintiff served in the military, where he suffered severe frostbite to his feet. *Id.* at 26. The condition of Plaintiff's feet deteriorated over the years, and, by 2010, he found it increasingly difficult and more painful to climb stairs. Jones Dep. at 27. Jones alleges that his "bilateral foot

---

[1] The facts in this section are based upon the exhibits submitted with the parties' Rule 56.1 Statements of Fact – namely, Plaintiff's deposition [68-3] and Plaintiff's Answers to Defendant's Interrogatories [81-1]. Defendant argues in its Reply Memorandum in Support of Summary Judgment that Plaintiff's bullet points in his Rule 56.1(b)(3)(B) statement fail to comply with Local Rule 56.1(b)(3). [82] at 2. The Court agrees and grants Defendant's motion to strike all of the bullet points contained within that response to the extent they are not also contained within Plaintiff's Statement of Additional Facts [81]. The Court denies Defendant's motions to strike Plaintiff's Statement of Additional Facts. As Plaintiff correctly notes, Defendant's motions are also improper under Local Rule 56.1. [88-1]

[2] The deposition of James Jones is attached to Defendant's Rule 56.1(a)(3) Statement [68] as Exhibits 3 and 4.

condition" constitutes a disability within the meaning of the ADA, and, for purposes of this motion, Defendant does not dispute this.

At his deposition, Jones testified that, in 2010, Sergeant Hoffman changed his assignment from courtroom 2009 to prisoner transport and base. Jones Dep. at 31-32. He testified that the prisoner transport and base assignment required him to climb stairs for all of the fourth floor courtrooms, as well as juvenile courtrooms, and to be "very mobile with misdemeanor and felony inmates." *Id.* at 32. When Jones told Hoffman that the new assignment would be "very difficult" for him to perform, Hoffman "became shouting mad and told me to leave, and not to return without a doctor's note." *Id.* at 33. Plaintiff testified that he obtained a doctor's note that same day and returned to work with it the next day. *Id.* Jones testified that he advised Hoffman that, pursuant to the note, he would be off work for three weeks; Hoffman called Jones two days later and told him that he was on "no call, no show" status. *Id.*

When Jones returned to work, Hoffman immediately assigned him back to the prisoner transport and base detail. *Id.* at 34. Jones "struggled through" to perform that assignment and successfully completed it. *Id.* at 34-35. Jones testified that he was assigned to the prisoner transport and base detail for one week. *Id.* at 35. Jones testified that, after that first week back, his supervisors gave him various assignments and moved him around quite a bit. *Id.* at 35. Making matters worse, Jones testified, they also started doling out his assignments each morning, rather

3

than the night before as they had previously done. *Id.* This required him to "hustle around" to get to his assigned location on time. *Id.*

Additionally, Jones testified that, sometime between 2010 and May 21, 2012, Sergeant Orphan gave him an "extremely poor" performance evaluation. Jones Dep. at 37, 85-86. According to Jones, Sergeant Orphan's evaluation rated him at a 40 – a rating that would ordinarily be supported with Chief's hearings and discussions about his lack of performance (which did not exist in his case) and that could have subjected Jones to termination. *Id.* at 37. Plaintiff requested a copy of the report. Sergeant Orphan refused to provide it, but did increase his score to a 67. *Id.*

Jones testified that, during this same time period (between 2010 and May 21, 2012), Sergeant Lackomecki refused to allow him to submit requests for medical appointments and told him she would not approve any more doctors' appointments; she told him that if he wanted to go to the doctor, he would have to call in sick. *Id.* at 38.

In November of 2011, Jones took six weeks off work to undergo surgery to donate a kidney to his son, who had a kidney disease and was in need of a transplant. Plaintiff's SOF [81] at pp. 44-45; Plaintiff's Answers to Defendant's Interrogatories, Answer No. 5. When Plaintiff returned to work in early 2012, Sergeant Hoffman was no longer his direct supervisor and Sergeant Victoria Lackomecki had taken his place. When Plaintiff asked Sergeant Lackomecki for time off for medical reasons, she refused, and told Plaintiff that if he needed to go to

4

a doctor's appointment, he would have to call in sick. Jones Dep. at 53. Plaintiff viewed this as an attempt to "make paper" on him because having to call in sick would appear as a "negative" in his personnel file and would make it seem that he had an absentee problem. *Id*. at 60-61. According to Plaintiff, Lackomecki also said "aren't you ready to retire yet?" *Id*. at 71.

According to Plaintiff, these actions led him to file a charge with the EEOC on June 4, 2012. *Id*. at 42. In his charge, Plaintiff claimed that, during his employment, he was "subjected to different terms and conditions of employment, including, but not limited to, not being allowed to request time off for doctors' appointments." June 4, 2012 EEOC Charge (attached as Exhibit A to Second Amended Complaint [50-1], p. 4). Plaintiff claimed in the charge that he believed his employer had discriminated against him "because of my disability and in retaliation, in violation of the [ADA]." *Id*. When asked at his deposition what his disability was at that time, he indicated that it was his "bilateral foot condition" – the deterioration of his feet as a result of the frostbite he suffered while in the military. Jones Dep. at 26. Jones testified that, by the time he filed the EEOC charge in June of 2012, he was "unable to climb stairs" and was "very unstable on my feet." Jones Dep. at 27. Jones testified that he filed the charge because his supervisors "totally disregarded my disability." *Id*. at 29. More specifically, he testified that the sergeants supervising him (Tom Hoffman, Vicky Lackomecki and Cory Orphan) "made paper on me"; "changed my assignments"; "refused to allow me

5

to request medical appointments, and they just made my work environment unbearable." Jones Dep. at 30.

The June 4, 2012 EEOC charge does not set forth the basis for any retaliation claim. When asked at his deposition to explain the basis of his retaliation claim, Plaintiff initially testified that he was being retaliated against for filing the EEOC charge, but then admitted that all of the conduct he was complaining about took place before he filed the charge. Jones Dep. at 40-42.

Jones testified that, after he filed his first EEOC charge, Sergeant Lackomecki continued to change his assignments and refused to allow him to request time off for doctor's visits. Jones Dep. at 53. In his answers to Defendant's interrogatories, Jones represented that, in or around June of 2012, Jones requested time off to visit the Veteran's Administration with respect to his bilateral foot condition, and Sergeant Lackomecki denied the request. *See* Plaintiff's Answers to Defendant's Interrogatories, Answer No. 6 [81-1] (attached as Exhibit 1 to Plaintiff's SOF). Additionally, the record shows that in late July of 2012, Defendant informed Jones that it would no longer accept doctor's notes and would no longer provide Jones with days off for medical treatment. *Id.* In January 2013, Lackomecki denied a request to see a physician related to his kidney transplant. *Id.* Additionally, the record shows that Plaintiff's job reassignments continued in 2013: (1) in 2013 he was assigned to the Order of Protection desk in courtroom 2001 for one week; (2) he was reassigned to traffic court for one week; and (3) he was assigned to Field Court approximately 3 or 4 times. *Id.*, Answer No. 7. 11.

6

Plaintiff filed a second EEOC charge on September 18, 2013. *See* Second Amended Complaint, Exhibit C [50-3], p. 4; Jones Dep. at 69. In the second charge, Jones claimed that, since filing the first charge of discrimination on June 4, 2012, he had been "subjected to different terms and conditions of employment in that I have been removed from my permanent assignment (2009) when work is still available." [50-3], p. 4. He further stated in the charge: "I believe I have been discriminated against because of my disability and in retaliation for engaging in protected activity, in violation of the [ADA]." *Id.*

Plaintiff received a Right-to-Sue letter on this charge on September 25, 2013, and filed his initial complaint in this case on December 17, 2013. Jones Dep. at 62; Complaint [1]. Jones subsequently filed two amended complaints. The second amended complaint ("SAC") [50] is the operative complaint. It alleges a single count of retaliation in violation of the ADA. More specifically, the SAC alleges that, "[a]fter Plaintiff filed his charges of discrimination with the EEOC, Defendant began a pattern of conduct of retaliation against the Plaintiff due to his disability and his activity protected by law, including but not limited to Plaintiff's act of filing his discrimination claim with the EEOC." SAC [50] at ¶ 58. Plaintiff alleges that, as part of that pattern of retaliatory conduct: "Defendant repeatedly placed Plaintiff in security assignments with stairs that were intended to aggravate Plaintiff's known disability and in direct defiance of Plaintiff's request for a reasonable accommodation" and Defendant attempted "to falsely 'make paper' on Plaintiff to support a wrongful firing of the Plaintiff." *Id.* at ¶¶59, 63. The SAC specifically

cites the incident with Sergeant Hoffman where he told Jones to leave work and not return without a doctor's note and then marked him down as "no call/no show" despite the doctor's note; it also cites Hoffman's decision to assign him to the same security assignment upon his return. SAC [50] at ¶¶ 64-65. It also specifically cites: Sergeant Lackomecki's comment "aren't you ready to retire yet?"; and Sergeant Orphan's extremely low performance evaluation of Jones. *Id.* at ¶¶66, 67-70.

On January 25, 2016, Defendant filed a motion for summary judgment as to Plaintiff's retaliation claim. In its motion, Defendant argues that Jones cannot, as a matter of law, demonstrate the elements of an ADA retaliation claim.

## II. Legal Standard

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether a genuine issue of material fact exists, this Court must construe all facts and reasonable inferences in the light most favorable to the

nonmoving party, here, Jones. *See CTL ex rel. Trebatoski v. Ashland School District*, 743 F.3d 524, 528 (7th Cir. 2014).

## II. Analysis

Plaintiff claims that Defendant retaliated against him in violation of the ADA. The ADA prohibits employers from retaliating against employees who assert their right to be free from discrimination. 42 U.S.C. § 12203(a); *Viramontes v. U.S. Bancorp*, No. 10-CV-761, 2011 WL 6780644, at *8 (N.D. Ill. Dec. 27, 2011). A plaintiff can establish a valid case of retaliation under the ADA using either the direct or indirect method of proof. *Povey v. City of Jeffersonville, Ind.,* 697 F.3d 619, 624 (7th Cir. 2012); *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1117 (7th Cir. 2001). Jones does not indicate whether he is proceeding under the direct or indirect method, so the Court will consider both.

### A. Direct Method

To prevail on his retaliation under the direct method, Jones must show that: (1) he engaged in a protected activity; (2) he suffered a materially adverse employment action; and (3) there was a causal link between his protected activity and the adverse action. *Povey*, 697 F.3d at 624. It is undisputed that Plaintiff engaged in a statutorily protected activity by filing an EEOC charge. The parties dispute whether Plaintiff suffered an adverse action and, if so, whether it was causally related to his EEOC charge.

An "adverse employment action is one that 'materially alter[s] the terms and conditions of employment.'" *Anderson v. The Foster Group.*, 521 F. Supp. 2d 758, 779

9

(N.D. Ill. 2007) (citing *Whittaker v. Northern Illinois University*, 424 F.3d 640, 648 (7th Cir. 2005)). To be actionable, an adverse employment action must be "materially" adverse, meaning "more than a 'mere inconvenience or an alteration of job responsibilities.'" *Oest v. Illinois Department of Corrections*, 240 F.3d 605, 612 (7th Cir. 2001) (quoting *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)). For example, a "'materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.'" *Oest*, 240 F.3d at 612 (quoting *Crady*, 993 F.2d at 136). Not everything that "makes an employee unhappy is an actionable adverse action." *Kersting*, 250 F.3d at 1115.

Here, Jones alleges that he suffered several materially adverse employment actions, including receiving an extremely low performance evaluation, being reassigned to details requiring him to climb stairs and be mobile, and being forced to take sick days rather than being granted time off from work to attend doctor's appointments. The evidence offered in support of Jones' claim, however, shows that none of these actions materially altered the terms and conditions of his employment.

First, there is nothing in the record to suggest that the poor performance evaluation had any impact on Jones' job, his pay or his assignments. In fact, Jones concedes that the low score was changed to a higher, more acceptable score within two weeks. Jones Dep. at 37. And negative performance evaluations, standing

10

alone, are not cognizable adverse employment actions. *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 739 (7th Cir. 2006). Nor is there anything in the record to suggest that Defendant's attempts to "make paper" on him cost him salary or other benefits; he has not alleged that calling in sick resulted in lower pay or any other tangible loss. In fact, at his deposition, Jones testified that he still was able to make all of his scheduled doctors' appointments. The only consequence was that his frequent calling appeared as "a negative" in his personnel file and made him look like a "problematic employee." Jones Dep. at 59-61. Yet Jones does not allege that he was fired or demoted or otherwise suffered because of that "negative."

Plaintiff also claims that the assignment to prisoner transport and base amounted to an adverse employment action. But there is no evidence that this assignment amounted to a demotion, with lower pay or fewer responsibilities. And Jones testified at his deposition that the assignment lasted just one week and that he was able to complete the assignment. Jones Dep. 34-35. Nor was the change in the way assignments were made material. Jones testified that he was reprimanded by a judge once for opening a courtroom late. But there is nothing in the record to suggest that this single reprimand affected his pay, his assignments, or any other aspect of his job. Plaintiff may have had to "hustle" to make it to his assigned location, but that would fall into the "mere inconvenience" category and not the "materially adverse" category. *See Oest*, 240 F.3d at 612.

Jones also alleges that he was constructively discharged. Jones alleges that the work reassignments (both the specific assignments and the manner in which

they were announced), the refusal to allow him to take time off for doctors' appointments and the attempts to "make paper" on him all made his work environment so unbearable that he was forced to resign. To prevail on a claim for constructive discharge, Jones must show that a hostile work environment existed and that the abusive working environment became so intolerable that his resignation qualified as a fitting response. *Herr v. City of Chicago*, 479 F. Supp. 2d 834, 840-41 (N.D. Ill. 2007) (citing *Penn. State Police v. Suders*, 542 U.S. 129, 146-47 (2004); *Rooney v. Koch Air, LLC*, 410 F.3d 376, 382-83 (7th Cir. 2005)). A "hostile work environment exists where an employee experiences harassment that is so 'severe or pervasive as to alter the terms and conditions of employment and create an abusive working environment.'" *Id.* (quoting *Mannie v. Potter*, 394 F.3d 977, 982 (7th Cir. 2005)). Jones must also show that the harassment resulting in his constructive discharge was motivated by his disability. *Id.*; *Rooney*, 410 F.3d at 383.

Although a constructive discharge constitutes an adverse employment action, Plaintiff has not alleged facts from which a reasonable factfinder could infer that he was constructively discharged. First, Jones has not presented evidence of a hostile work environment. In *Herr v. City of Chicago*, the plaintiff claimed ADA retaliation and constructive discharge; he alleged that his supervisors ignored him, treated him as if he did not exist, made derogatory remarks about him and refused his schedule change request. 479 F.Supp.2d at 837-38. Citing cases in which constructive discharge was found to have occurred and noting the egregious nature of the

conduct alleged in those cases, the district court determined that Kerr's allegations did not rise to that level. *Herr*, 479 F.Supp. 2d at 841 (comparing *Taylor v. Western & Southern Life Ins. Co.*, 966 F.2d 1188, 1191 (7th Cir. 1992), which found constructive discharge where the plaintiff's boss consistently made racial comments, once held a gun to plaintiff's head, took a photo and later showed it at a staff meeting while making racial jokes), and *Brooms v. Regal Tube Co.*, 881 F.2d 412, 417 (7th Cir. 1989), which found constructive discharge where a human resources manager threatened to kill the plaintiff and repeatedly showed her racist pornographic photos.).

The conduct alleged here similarly falls far short of demonstrating a hostile environment. Unless "conditions are beyond 'ordinary' discrimination, a complaining employee is expected to remain on the job while seeking redress." *E.E.O.C. v. Sears, Roebuck & Co.*, 233 F.3d 432, 440 (7th Cir. 2000). Jones has not alleged conditions that went beyond ordinary; indeed, there is nothing in the record to suggest that he ever even lodged a formal complaint with anyone at the Sheriff's Office about the conduct he alleges was discriminatory.

Even if Jones could show that he suffered an adverse employment action, he cannot show that the action was causally related to his protected activity. To demonstrate the required causal link in a retaliation claim, a plaintiff must provide evidence that the protected action was a "substantial motivating factor" for the adverse employment action. *Smith v. Bray*, 681 F.3d 888, 900 (7th Cir. 2012). With regard to causation, Plaintiff argues that his reassignments and his having to

call in sick to work for doctor appointments were punishment in retaliation for his EEOC charges. He argues that he has proven causation by "establishing a 'telling temporal sequence' between his disability and Defendant's pattern of retaliatory assignments." Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment [80] at 15. The Court disagrees. Plaintiff's temporal sequence does not establish that his EEOC claim was a substantial motivating factor for any adverse employment actions. Although suspicious timing may constitute evidence of retaliation, *e.g., Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994), here, the timing undermines Jones' retaliation claim.

Jones has consistently alleged that Defendant retaliated against him because he filed the EEOC charges. But such a claim makes no sense with respect to the discriminatory conduct alleged in the first charge because he had not yet filed an EEOC charge when that conduct occurred. Jones conceded as much at his deposition. Jones Dep. at 40-42.

Additionally, all of the conduct Jones complains about (including his first charge, his second charge and his complaint) occurred before he filed his charges. Jones testified that the job reassignments and the change in announcing job assignments occurred in 2010 and 2011. Jones Dep. at 34. Jones testified that Sergeant Lackomecki started requiring him to call in sick for medical appointments beginning in early 2012. *Id.* at 53. Lackomecki's comment about retirement also came in early 2012.

Jones testified at his deposition that he suffered no discriminatory or retaliatory conduct for a year after he filed the first charge – that is, from June 4, 2012 through June 4, 2013. Jones Dep. at 88-89. He testified that, after that, between June 4, 2013 and September 18, 2013, "it really became unbearable, and that prompted my re-filing." *Id.* at 89. Yet, when pressed, he could not articulate a single act taken against him that was not also occurring prior to the time he filed the June EEOC charge. Indeed, he testified that the acts that had been occurring prior to the filing of the charge were "revisited" after he filed the charge. Jones Dep. at 91. He testified that the actions alleged to be retaliatory to the EEOC charge filing "were the same things that occurred in 2010, and up to June of 2012." Jones Dep. at 120. This evidence belies any claim that the filing of the EEOC charge substantially motivated Defendant's conduct. Jones offers no other evidence of causation. Absent such evidence, Plaintiff's retaliation claim fails under the direct method of proof.

### B. Indirect Method

A plaintiff may also elect to use the indirect, burden-shifting method for proving a retaliation claim. Under the indirect method, "the plaintiff must demonstrate that he: (1) engaged in protected activity; (2) was performing his job satisfactorily; and (3) was singled out for an adverse employment action that similarly situated employees who did not engage in protected activity did not suffer." *Dickerson v. Bd. of Trustees of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601-02 (7th Cir. 2011) (*citing Lloyd v. Swifty Transportation, Inc.*, 552 F.3d 594, 601

15

(7th Cir. 2009)). If the plaintiff satisfies this initial burden, the burden then shifts to the defendant to present a non-invidious reason for the adverse employment action, and if the defendant meets this burden, then the plaintiff must demonstrate that the defendant's proffered reason is merely a pretext for discrimination. *Dickerson*, 657 F.3d at 602 (citing *Jasmantas v. Subaru–Isuzu Auto., Inc.*, 139 F.3d 1155, 1157 (7th Cir. 1998)).

The parties agree that Jones engaged in protected activity when he filed EEOC charges on June 4, 2012 and September 18, 2013, and there is no dispute that Jones was meeting his employer's legitimate expectations. But Jones is unable to prove the remaining element of his prima facie case under the indirect method. As explained above, he cannot show that he suffered any adverse employment action. Nor has Jones demonstrated that similarly situated employees who did not engage in protected activity were treated differently.

Defendant argues that Plaintiff has not identified "any similarly situated employee who did not engage in protected activity under the ADA, who was treated more favorably than Plaintiff." [67] at 10. The Court agrees that Plaintiff has offered no evidence on this point. In a prima facie case of retaliation under the indirect method, a plaintiff must identify a similarly situated employee who did not engage in a protected activity and was treated more favorably than the plaintiff. *Lloyd*, 552 F.3d at 601. A plaintiff must identify someone with enough similarity in key areas that a jury could infer that the only meaningful difference between the two is a previous charge of discrimination against the employer. *Humphries v.*

*CBOCS West, Inc.,* 474 F.3d 387, 405 (7th Cir. 2007). Plaintiff has offered no such evidence. In fact, the only evidence concerning anyone other than Plaintiff is Plaintiff's deposition testimony that he "felt as though I was being treated differently than everybody else, and that prompted my second [EEOC] filing." Jones Dep. at 68.

In *Hancock v. Potter*, a U.S. Postal Service employee alleged retaliation by her employer after she filed EEOC charges. 531 F.3d 474, 477 (7th Cir. 2008). Yet, plaintiff there offered no evidence of similarly situated employees; she named no names and gave no comparisons. The Seventh Circuit held that the plaintiff's "attempt to make out a prima facie case falls short because she has not identified a similarly situated non-complaining employee, much less presented convincing evidence that such an employee was treated more favorably." *Id.* at 480. The same is true here.

Plaintiff has not identified any similarly situated employee who did not engage in a protected activity and was treated more favorably than him. Although he testified that he felt he was being treated differently than "everybody else," Jones Dep. at 69, Jones has not named names and has provided no additional detail as to the other employees. Jones has not alleged or offered any evidence to indicate whether the other employees engaged in protected activity. Nor has he alleged or offered evidence to show that the other employees were not subject to the same policies he was. Absent evidence along this line, summary judgment in favor of Defendant is appropriate. *See Citizens for Appropriate Rural Roads v. Foxx*, 815

17

F.3d 1068, 1077 (7th Cir. 2016) ("summary judgment is the 'put up or shut up' moment in a lawsuit") (quoting *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010)). Just as it did under the direct method, Plaintiff's retaliation claim fails under the indirect method.

**IV.   Conclusion**

For the reasons explained above, the Court finds that Plaintiff's retaliation claim fails under both the direct method and the indirect method. As a result, summary judgment in Defendant's favor is appropriate, and Defendant's motion for summary judgment [66] is granted. The Clerk is directed to enter Rule 58 judgment in favor of Defendant and against Plaintiff. Civil case terminated.

Dated: July 14, 2016

Entered:

_____
John Robert Blakey
United States District Judge